HARRY B. SEYMOUR, PLAINTIFF, v. ESSEX COUNTY PRINTING PRESSMEN AND ASSISTANTS' UNION NO. THIRTY-ONE, A VOLUNTARY UNINCORPORATED ASSOCIATION, AND HARRY WENDRICH, DEFENDANTS.

Decided November 12, 1941.

For the plaintiff, *Albert S. Gross.*

For the defendants, *Meyer M. Semel.*

BARBOUR, C. C. J. (Orally.) * * * This action is to recover damages by reason of the inability of the plaintiff to continue in employment, where membership in a union is a prerequisite to employment, and alleges that the defendant union and the individual defendant did unlawfully, maliciously, wantonly, and without legal or justifiable cause or excuse, willfully coerce, threaten, instigate, persuade, procure, entice and induce the said Consolidated Films Industry, Incorporated, and so forth, to refuse to continue the plaintiff in its employment, to discharge him.

Paragraph 8 of the complaint reads: "By reason thereof, and by reason of the acts," as amended, so as to allege a continuing wrong, "plaintiff has been deprived of his right to engage in such employment as he may choose, free from hindrance or obstruction."

And paragraph 9: "By reason of the refusal aforesaid, and by reason of the acts of the defendants, has been and still

is," &c., "deprived of employment as a master pressman in all union plants in and about the locality hereinabove described, and has been prevented from earning a livelihood by employment in this trade."

The whole action is based upon an allegation of procuring the dismissal or discharge of the plaintiff by the Consolidated Film Industries, without legal or justifiable cause.

The plaintiff is not one who is unfamiliar with unions. He had been a member of unions from his early days, at least 1921, because his membership card for that year is marked as *Exhibit P-8*. He was chairman of the striking employees at the plant of the Consolidated Film Industries, Incorporated, and he approved of the closed shop agreement that was finally obtained, and under which he returned to work, or perhaps it might better be said that he returned to work before the agreement was consummated. Prior to the time of his terminating his employment with the Consolidated Film Industries he was receiving the benefit of the wage scale under such agreement obtained as a result of the strike; in his particular instance an increase of one-third above his pre-existing salary.

There have been introduced in evidence several exhibits, some of which, such as the photographs, still are without meaning to the court, but several of which were intended to show that, at the time he was called upon to pay his initiation fee and dues in the union, he was in financial distress.

Those facts were apparently presented to the union. They were presented to Mr. Wendrich. They were presented to the national president of the union, apparently, and they did not see fit to consider that a sufficient excuse for non-payment of the dues and initiation fee.

Throughout the entire story of the plaintiff, both from his testimony and from the evidence that has been marked by way of exhibits, it would appear that the plaintiff felt that he should be allowed to be a member for a $10 initiation fee, instead of $25. By becoming a member of the association, which he did voluntarily, he naturally assumed the obligations that went with such membership; and one of the obligations that goes with membership in any association,

whether it be a union or a fraternal organization, or any other group—yes, even a Bar Association—one of those obligations is to pay his dues, and, where there is an initiation fee, to pay that.

Now, there has been no showing on the part of the plaintiff that the method by which he was suspended or expelled, no matter which term you apply, was in violation of the by-laws and constitution of this union.

We have not had the benefit of testimony to show the territorial jurisdiction of the union. We do not know whether it extends up to that part of New York State—Rockland County—in which the plaintiff has apparently lived for a good part of the last several years, although not continuously. We do not know the territorial jurisdiction at all of this defendant union.

There has been no showing that his prior membership in Local 51, in New York, was affected by his suspension in this local. One might assume that that would follow as a logical sequence.

Our Court of Errors and Appeals, in 1906, speaking through Mr. Justice Pitney, in the *Brennan* v. *United Hatters Case, 73 N. J. L. 729* (at *p. 742*) ; 65 *Atl. Rep.* 165, said:

"The common law has long recognized as a part of the boasted liberty of the citizen the right of every man to freely engage in such local business or occupation as he himself may choose, free from hindrance or obstruction by his fellow-men, saving such as may result from the exercise of equal or superior rights on their part—such, for instance, as the right of fair competition in the like field of human effort—and saving, of course, such other hindrance or obstruction as may be legally excused or justified."

The law has likewise long recognized that a person may voluntarily subject himself to restrictions upon his lawful rights. We have repeatedly had before us cases wherein persons became members, for instance, of a sick benefit society, and we have found in those cases that they must first exhaust their remedy within their association, if they have any such provision, before they can resort to our law courts. So that we have recognized that a person may submit

himself to a jurisdiction other than that of our courts, and that having done so he may find himself denied of the right to go into court on an equal standing with those who have not submitted themselves to the jurisdiction of such an association as in this case.

If this were an action against a union whereby it was alleged that they had conspired, and deprived a non-union man of· his right to work, by establishing an absolute monopoly in the territory, and refusing arbitrarily to take that person into membership, we would then have an entirely different picture.

Our law, both statutory and as found in our legal decisions, has gone a long way from the days of the common law, with reference to labor and labor unions. What was considered to be illegal in that respect but a few years ago has now had the stamp of approval, both by our legislatures and our courts.

The whole world, of course, is in a state of flux right now, but there has been a decided change in the contemplation of these social rights by those in authority, in the last decade or so. We are more or less getting back in some respects to the democracy of Athens in the golden age of Pericles, 450 B. C., and the social security and the social movements of those days, 2,500 years ago. They seem new to us, some of these ideas, because they have been so long asleep, but we must recognize them. And in deciding a case of this sort we must recognize that our courts have upheld contracts providing for a closed shop. *F. F. East Co., Inc.,* v. *United Oystermen's Union* 19600 *et al.* (*Court of Errors and Appeals*), 130 *N. J. Eq.* 292; 21 *Atl. Rep.* (2d) 799, September 19th, 1941. So the doubt expressed by Mr. Justice Pitney in 1906, as to the validity of a contract for a closed shop, can no longer be said to exist.

The plaintiff himself was pleased to see an agreement for a closed shop, and could hardly be heard to complain that such an agreement is illegal.

He voluntarily submitted himself to all of the rights and liabilities incident to such an agreement.

There has been no showing of intentional or actual malice on the part of anyone in this case. There has been no show-

ing, as a matter of fact, that the defendant was discharged by the Consolidated. I think we all might infer that if he was not, in fact, discharged, however, that he would have been within a few minutes or hours, or a few days after being deprived of his membership card; otherwise the employer would have been confronted with the cries of the union that it was so soon violating the terms of the contract.

I do not feel that this plaintiff has made out a cause of action. He has not shown evidence from which the jury could reasonably infer that either the union defendant or the individual defendant acted in any other than a proper manner, in denying to him a continuation of his membership in the union, in view of the continued failure to meet the financial obligations imposed upon him by that membership.

This whole case seems to depend upon that one thing. He failed to continue to be a member in good standing by not paying his initiation and his dues. There is no indication that he was removed on charges of anything else.

It seems to me to be good law to-day that where a person voluntarily subjects himself to membership in a union, and fails to pay the balance of his initiation fee, and his dues, he cannot thereafter complain because of losing his membership, with such results as naturally flow therefrom.

It is to be noted that his main complaint was with reference to the amount of the initiation fee. There has been no testimony that he was dissatisfied in any way with the amount of the dues, nor did he pay those dues for the month in question, the month of June. Had he merely been dissatisfied with the initiation fee, and had paid his dues, but continued to argue about the amount of the initiation fee, we might have a little different picture. But he made no attempt to keep himself in good standing.

A judgment of nonsuit will therefore be entered.